Pietro et al., Appellants, *v.* Pietro et al., Appellees.

220

(No. 4676—Decided June 26, 1957.)

*Mr. Keith Lawrence* and *Mr. Harry A. Blackman,* for appellants.

*Mr. Frank Leonetti,* for appellees.

DOYLE, J. This action was commenced by Mike and Lizzie Pietro, husband and wife, and directed against their son and daughter-in-law, Joseph and Helen Pietro, husband and wife.

It was alleged in the petition that they had a "legal estate in, and are entitled to the possession of," real property which is specifically described.

For a second cause of action, the plaintiffs pleaded that in November, 1952, they executed a certain quit-claim deed to the property hereinbefore described, deeding said property to defendants, but reserving therefrom a life estate in each of said plaintiffs, and to the survivor thereof, and to the possession of said premises and to all the rents, issues and profits thereof. That defendants from and since that date have remained in complete and exclusive possession of said premises and have failed and refused to deliver to plaintiffs the rents, issues and profits thereof and are accountable for same.

The pleading concludes by praying for a judgment of possession of the property; that an accounting be ordered for the rents, issues and profits of said premises; and that judgment be entered against the defendants for the total of said rent, issues and profits as may be determined.

In answer to the first cause of action in the petition, the defendants denied a legal estate in the plaintiffs; and denied that the plaintiffs are entitled to possession of the property and that they are unlawfully keeping the plaintiffs out of possession.

In answer to the second cause of action, they pleaded a general denial; admitting, however, "that on the 30th day of October, 1952, the plaintiffs executed a deed to the property de-

scribed in plaintiffs' first cause of action, and that, in said deed, the plaintiffs endeavored to retain a life estate in said property; admit that the defendants have been in exclusive possession of said premises since October 30, 1952, and further say that they have been in exclusive possession of said premises since the 9th day of June, 1944, the date on which these defendants purchased the property in question and placed title thereof, for the sake of convenience, in the name of the plaintiff Mike Pietro."

The defendants, by way of cross-petition, prayed that the interest of the plaintiffs in the property be adjudged null and void; that the defendants' "title be quieted against the same"; and for equitable relief. They averred specifically that (1) they purchased the property on June 9, 1944; (2) title was taken in the name of the father, Mike Pietro "for the sake of convenience"; (3) at the time of this conveyance the father, Mike Pietro, agreed to convey the property to the defendants upon request; (4) many requests were made thereafter, each of which was refused; (5) on October 30, 1952, the plaintiffs "executed a quit-claim deed conveying said premises to the defendants * * *, but endeavored to retain a life estate in said premises contrary to the statement, made by the plaintiff Mike Pietro at the time title was put in his name, that he would convey said premises to the defendants, free from all claims by said plaintiff, Mike Pietro * * *."

The plaintiffs, by way of answer to said cross-petition, among several admissions and denials of allegations in the cross-petition, admitted that "they did convey to defendants the legal title but that a life estate was retained therein," and denied that such estate is null and void.

The record of the trial is replete with conflicting testimony. There is, however, sufficient testimony (if believed), and exhibits of sufficient probative value, to conclude, as did the trial judge, as reflected in the following extraction from the judgment entry, that—

"1. The property * * * was purchased under an agreement made between Mike Pietro and Joseph Pietro, whereby Mike Pietro would take the legal title in his name for the benefit of Joseph Pietro.

"2. Mike Pietro, by the terms of the agreement entered

into with his son, Joseph, promised to convey title to the property described in plaintiffs' petition whenever Joseph Pietro requested it.

"3. In June, 1944, under the terms of said agreement, Mike Pietro obtained the legal title and Joseph Pietro the equitable title to said property described in the petition.

"4. At no time thereafter did Mike Pietro and Joseph Pietro enter into any agreement altering the status of the title as hereinabove stated. The action taken by Mike Pietro and his wife, Lizzie, to quit-claim the legal title to Joseph was done without any assent on the part of Joseph Pietro. The attempt on the part of Mike Pietro and his wife, Lizzie Pietro, to reserve a life interest in their favor was void for the reason that Joseph Pietro did not agree to it.

"5. Joseph Pietro is now and was at all times in possession of the property, and is entitled to the possession thereof, and that Mike Pietro and Lizzie Pietro are not entitled to possession thereof, as prayed for in the petition.

"6. Mike Pietro advanced the following sums at the request of Joseph Pietro and for his benefit to assist him in acquiring the property described in plaintiffs' petition:

"(a) $1,200.00 in June, 1944, as partial cash payment.

"(b) $4,200.00 in June, 1944, as partial cash payment.

"(c) $60.83 on July 23, 1954, for insurance premium.

"(d) $336.00 (approximately) for taxes.

"7. Mike Pietro received the following sums, which should be credited against Joseph Pietro's indebtedness:

"(a) $600 for an easement granted to the East Ohio Gas Company, April 27, 1946.

"(b) $60.00 for rent for cottage on farm (date unknown).

"8. Joseph Pietro is entitled to an order quieting title in his favor, free and clear of any and all claims of his parents, Mike and Lizzie Pietro, as prayed for in his cross-petition, upon payment by him of the judgment lien and equitable charge provided below.

"9. Mike Pietro is entitled to a judgment against Joseph Pietro in the sum of Eight Thousand Six Hundred Twenty-two and 43/100 Dollars ($8,622.43), with interest at six percent (6%) from June 1st, 1956, which judgment shall constitute a

lien and equitable charge on the property described in plaintiffs' petition.''

In consideration of the legal question presented in this case, it may be fairly stated that, if B lends money to A, in order that A may purchase land from X, but B pays the purchase money directly to X and takes title in his own name, the money advanced by B never actually belonged to A; because, just before B paid it over to X, the money belonged to B, and just after B paid it over to X, the money belonged to X.

Here, there is not shown separate transactions in which B first lent the money to A, and A subsequently paid it over to X, in which case it would have been clearly A's money which was paid to X. However, the general rule gained from court decisions is that it is immaterial that the loan to A and payment by B to X constitutes a single transaction, because a loan may be made in other ways than by giving the money over to the borrower. It may be made by paying it to another at the borrower's request. Hence, although B pays the purchase money directly to X, in substance it is A's money, being money lent by B to A.

Under such circumstances there comes into being a resulting trust for A. B, however, cannot be compelled to convey the property to A, unless and until A pays B the amount of the loan. A's equitable interest by way of a resulting trust, therefore, is subject to B's security interest.

Similarly, if B pays a part of the purchase price to X by way of a loan to A, and A pays the balance, B holds upon a resulting trust for A. Here, as in the situation developed in the preceding paragraph, A's equitable interest, by way of a resulting trust, is subject to B's security interest.

In the preceding paragraphs, we have designated the participants in the transaction as A, B, and X. If we now substitute the son, Joseph Pietro, one of the appellees, for Mr. A, the father, Mike Pietro, one of the appellants, for Mr. B, and the seller of the property for Mr. X, we have stated the law to support the factual findings of the court below, and its judgment in favor of the appellees upon the condition that they pay the appellants the money advanced by them to help in the purchase of the property.

The appeal before us is on questions of law. It was the province of the trial court to determine the credibility of the various witnesses, and to draw reasonable inferences therefrom. It is only when there is an absence of probative facts to support the conclusion reached by the trial court that reversible error appears in respect to the question of proof.

So, where, as here, there is an evidentiary basis for the court's finding of fact, the court is free to discard or disbelieve whatever facts are inconsistent with its conclusion; and the appellate court's function is exhausted when that evidentiary basis becomes apparent; it being immaterial that the appellate court might draw a contrary inference or feel that another conclusion is more reasonable.

We find no error of a prejudicial character in the case under review, and, as a consequence, the judgment must be affirmed.

*Judgment affirmed.*

HUNSICKER, P. J., and STEVENS, J., concur.